# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

MUSSE AHMED ALI,

      Plaintiff,

v.

HEATHER WEYKER, *in her individual capacity as a St. Paul Police Officer*; JOHN BANDEMER, *in his individual and official capacities as a St. Paul Police Sergeant*; ROBERT ROES 1-3, *in their individual and official capacities as supervisory members of the St. Paul Police Department*; *and* THE CITY OF ST. PAUL,

      Defendants.

Case No. 16cv1241 (JNE/TNL)
ORDER

## I.    INTRODUCTION

Plaintiff Musse Ahmed Ali alleges violations of his constitutional rights in an investigation that led to his indictment by a federal grand jury and his subsequent arrest. He sues Defendants Heather Weyker, a police officer for the St. Paul Police Department in Minnesota; John Bandemer, a St. Paul Police Department sergeant who is alleged to have been Weyker's supervisor; Robert Roes 1-3, who are allegedly supervisory St. Paul police officers; and the City of St. Paul ("St. Paul"). Weyker and Bandemer move to dismiss Ali's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and on absolute and qualified immunity grounds. Dkt. No. 37. St. Paul moves on behalf of the City of St. Paul and Robert Roes 1-3 for judgment on the pleadings pursuant to Rule 12(c). Dkt. No. 46.

The investigation at the core of Ali's civil complaint targeted a suspected venture involving the sex-trafficking of minor girls across Minnesota, Tennessee, and Ohio. The investigation resulted in the criminal indictment of thirty people, mostly Somali, in the Middle

District of Tennessee in 2010-2011 ("Tennessee Case").  Ali alleges that Weyker fabricated evidence about him and others throughout the investigation, resulting in a tainted indictment that was further corrupted by Weyker's continuing deception, and causing his arrest and detention without probable cause.

Nineteen of Ali's co-defendants in the Tennessee Case bring separate suits similarly alleging constitutional violations, and a twenty-first person brings another related civil suit.  The parties agreed to coordinated briefing on the Defendants' motions.  The Court assumes familiarity with its fuller opinion in one of the related cases, *Osman v. Weyker, et al.*, No. 16cv908 ("Osman Opinion") (filed simultaneously herewith), and will not repeat that opinion's discussion verbatim here, given the overlap in allegations and arguments.  Ali is represented by the same attorneys as the plaintiff in that case, and their attorneys filed consolidated opposition papers to the Defendants' motions.  *See* Osman Pls.' Opp. to St. Paul Mot., Dkt. No. 51; Osman Pls.' Opp. to DOJ Mot. to Dismiss ("Osman DOJ Opp."), Dkt. No. 57.

The Court held a hearing on the motions on May 3, 2017, and now grants both motions.[1]

**II.    APPLICABLE STANDARDS**

A motion to dismiss or a motion for judgment on the pleadings is appropriately granted "only when there is no dispute as to any material facts and the moving party is entitled to judgment as a [m]atter of law."  *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015) (citation omitted).  To survive a Rule 12 motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Haney v.*

---

[1] The United States also filed a Motion to Substitute and Dismiss, which was mooted by stipulation as recognized by the March 6, 2017 Order Permitting the Osman Plaintiffs to Amend Complaints.  Dkt. No. 61.  Pursuant to that order, Ali filed a First Amended Complaint [Dkt. No. 62] ("FAC"), which is thus the operative complaint subject to these Rule 12 motions.

*Portfolio Recovery Assocs., LLC*, 837 F.3d 918, 924 (8th Cir. 2016), *as amended* (Dec. 27, 2016). *See also* Osman Op. 3-4.

### III. ALLEGATIONS

Most of the salient allegations are similar to those alleged by Osman and summarized and analyzed in the Court's order in that case. *See, e.g.*, Osman Op. 4-8. The Court briefly recounts some allegations in Ali's First Amended Complaint and other facts gleaned from the Tennessee Case record.

In 2009, Ali lived in Nashville, Tennessee. FAC ¶ 10. That year, he "had a phone conversation with one or more of his future, alleged co-conspirators, in which the other person(s) on the call talked about a young woman they had met recently in rather lewd terms," but not in a way that could possibly serve as "evidence of the commercial sex-trafficking of minors." FAC ¶ 11. Yet Weyker, who was the lead investigator on the case, FAC ¶ 33, "made that phone call the central hook for alleging that Ali had engaged in a conspiracy to commercially sex-traffic" Jane Doe Two "and other alleged minors," FAC ¶ 12.

A First Superseding Indictment was filed in the Tennessee Case on November 3, 2010, naming 29 defendants.[2] The indictment alleged that Ali was an associate of members of two related Minneapolis-based gangs. FSI ¶¶ 1(a)-(b), 1(e) & 1(f). It charged Ali in three counts. Counts 1 and 2 alleged his participation in a sex-trafficking conspiracy in violation of 18 U.S.C. § 1591(a). Count 18 charged Ali with conspiring to commit credit card fraud in violation of 18 U.S.C. §§ 1029(a)(1), 1029(a)(2), and 1029(a)(3). *See* First Superseding Indictment ("FSI"),

---

[2] Ali's complaint does not refer to the First Superseding Indictment, but counsel has acknowledged it. *See* Dkt. No. 67. Because the indictment is a matter of public record, the Court may take judicial notice of it and other documents in the Tennessee Case record. *Greenman*, 787 F.3d at 887.

3

*United States v. Ali*, No. 3:10cr260, Dkt. No. 36 (M.D. Tenn. Nov. 3, 2010) (submitted as Ex. V in support of Weyker and Bandemer's Reply in this civil case).

As to Counts 1 and 2, the indictment alleged that during a trip from Minneapolis to Nashville by co-defendant Haji Osman Salad, Jane Doe Two, and others in April 2009, Salad "was to provide Jane Doe Two" to Ali "for him to 'enjoy,'" and that Ali "was to assist in causing Jane Doe Two to engage in commercial sex acts." FSI ¶ 48. In addition, the indictment alleged that around August 23, 2009, Ali had a conversation with co-defendant Liban Sharif Omar in which L. Omar told him "that in Tennessee a 'little teenager girl came up and she is hot' and was giving the 'whole block' oral sex." FSI ¶ 64. Speaking with a different person that same day, Ali allegedly recounted to that person what L. Omar had told him about the girl. FSI ¶ 65.

The fraud charge in Count 18 alleged a conspiracy between 2007 through September 2010. FSI ¶ 117. The First Superseding Indictment alleged that on August 23, 2009, Ali asked L. Omar "how many cards and numbers" he had, and L. Omar responded that he had "just got this one from Haji," which may have been a reference to Salad. FSI ¶ 129.

Ali alleges that the sex-trafficking conspiracy charges were the "core claims" against him. FAC ¶ 26. "No such conspiracy existed, and Defendants knew it." *Id.* He has never met Jane Doe Two. FAC ¶ 13. He "had no intention, desire or expectation that Jane Doe Two or anyone else engage[] in the exchange of sex for money." FAC ¶ 41. He never entered into any agreement to sex-traffic persons, and Weyker knew it. FAC ¶ 43. "Weyker used falsified extensive documentary evidence of Ali's involvement, and used a phone call that did not incriminate Ali to attempt to rope him into the conspiracy." FAC ¶ 42.

On November 8, 2010, Ali was arrested. FAC ¶ 27. As with Osman, because the indictment charged Ali with sex-trafficking-related offenses, he was subject to a rebuttable

4

presumption of pretrial detention and was ordered detained pending trial. FAC ¶ 28.

Like Osman, Ali alleges that the charges of a widespread sex-trafficking conspiracy were baseless and that Weyker fabricated "[t]he overwhelming majority of the critical evidence supporting the indictments in this alleged conspiracy," FAC ¶¶ 31-32; that Weyker manipulated and coerced Jane Doe witnesses into lying, FAC ¶¶ 39-41; that Weyker was motivated to falsify evidence by a desire for glory, FAC ¶ 1; that Weyker "worked with almost no supervision by her employer and principal" the St. Paul Police Department, FAC ¶ 44; and that indications of Weyker's fabrication included her rough notes, questions surrounding Jane Doe Two's age and her trip to Nashville in April 2009, the acquittals of nine co-defendants who went to trial, and remarks about Weyker by the district and appellate courts in the Tennessee Case, FAC ¶¶ 14-15, 36-37, 39-40, 48-51, 53.

Nine of Ali's co-defendants went to trial in Spring 2012, and the jury rendered its verdict in early May 2012. *See* FAC ¶ 48; *United States v. Adan*, 913 F. Supp. 2d 555, 560 (M.D. Tenn. 2012). On May 4, 2012, Ali was released on home monitoring. FAC ¶ 56. The jury acquitted six defendants on all charges, and in December 2012, the district court granted Federal Rule of Criminal Procedure 29 motions for acquittal by the other three defendants on the basis of a variance. *Adan*, 913 F. Supp. 2d at 560, 579; *see also* FAC ¶ 49. In March 2016, the Sixth Circuit Court of Appeals issued an order affirming the district court's Rule 29 order. *See* FAC ¶ 50; *United States v. Fahra*, 643 Fed. Appx. 480 (6th Cir. 2016). The federal charges against Ali were then dismissed. FAC ¶ 59.

### IV. SUMMARY OF ARGUMENTS

A summary of the parties' arguments on these consolidated motions is included in the Osman Opinion at pages 8-10.

## V. LEGAL ANALYSIS

As explained fully in the Osman Opinion, pursuant to *Manuel v. City of Joliet*, 137 S. Ct. 911 (Mar. 21, 2017), Ali's claims sound, if at all, in the Fourth Amendment, not the Fifth or Fourteenth. *See* Osman Op. 11-13; *see also id.* at 17-22. Ali's complaint is that "[b]ut for the evidence Weyker fabricated, no probable cause existed to detain or otherwise restrict [his] liberty." FAC ¶ 1. In other words, his complaint is "that a form of legal process resulted in pretrial detention unsupported by probable cause." *Manuel*, 137 S. Ct. at 919. So "the right allegedly infringed lies in the Fourth Amendment." *Id.* A "constitutional division of labor" applies to claims similar to Ali's. *Id.* at 920 n.8. Thus, because he challenges his pretrial detention, his claim is under the Fourth Amendment, but if he had been convicted and were to challenge the sufficiency of the evidence supporting that conviction, his claim would then be under the Due Process Clause of the Fourteenth Amendment because "once a trial has occurred, the Fourth Amendment drops out." *Id.* Ali's claims for substantive due process violations under the Fifth or Fourteenth Amendments therefore fail. *See also Albright v. Oliver*, 510 U.S. 266, 271 (1994) (plurality opinion).

The Court thus rejects the substantive due process claims on the basis of *Manuel* and *Albright*, but it also notes that to the extent these claims rely on the allegation that Ali was held in custody, rather than released on bond, because of the fabricated evidence supporting the sex-trafficking conspiracy charges, *see* FAC ¶ 28, this argument for a substantive due process claim fares no better. The Bail Reform Act requires a court to hold a detention hearing if the government moves to detain a pretrial defendant in a case that charges a violation of 18 U.S.C. § 1591. 18 U.S.C. § 3142(f)(1)(A) (2008). In that hearing, a number of procedural rights are afforded by the statute. *See id.* § 3142(f); *United States v. Stephens*, 594 F.3d 1033, 1038 (8th

6

Cir. 2010). The court must consider (1) "the nature and circumstances of the offense charged, including whether the offense is . . . a violation of section 1591," (2) "the weight of the evidence against the person," (3) "the history and characteristics of the person," and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). If the court determines by clear and convincing evidence that there is no combination of conditions that could "reasonably assure the appearance of such person as required and the safety of any other person and the community," *id.* § 3142(f), then the court "shall order" the defendant's detention pending trial, *id.* § 3142(e). Although in a case in which the judge "finds that there is probable cause to believe that the person committed . . . an offense involving a minor victim under section . . . 1591," it "shall be presumed" that detention is necessary, that presumption may be rebutted by other evidence at the detention hearing. *Id.* § 3142(e)(3)(E). Moreover, the defendant's presumption of innocence remains in force at the detention hearing. *Id.* § 3142(j). Ali does not allege any facts about his detention hearing. Even crediting his allegations that Weyker fabricated evidence of a sex-trafficking conspiracy and fooled the grand jury into indicting him on those charges, *see* FAC ¶ 35, the Court could not reasonably infer that the sex-trafficking-related charges caused him to be held in custody, because the § 3142 presumption was rebuttable and multiple factors had to be considered. "The Government must first of all demonstrate probable cause to believe that the charged crime has been committed by the arrestee, but that is not enough." *United States v. Salerno*, 481 U.S. 739, 750 (1987). "In a full-blown adversary hearing, the Government must convince a neutral decisionmaker by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community or any person." *Id.* Ali was entitled, for example, to an evaluation of the weight of the evidence against him, yet he does not allege that

7

Weyker played any role in tainting this separate judicial determination. The silence in Ali's complaint on this topic leaves open the possibility that he waived his right to a hearing. More importantly, the record reflects that even after the trial of the nine co-defendants, a panel of the Sixth Circuit found that six of his co-defendants should remain in custody pending trial or retrial, based in part on an evaluation of the weight of the evidence at trial. *United States v. Fahra*, No. 13-5296, Dkt. No. 61-1 (6th Cir. Dec. 18, 2013) (submitted in this case at DOJ Reply Ex. BB). This fact further reinforces a conclusion that Ali fails to plausibly allege substantive due process violations on the basis of a § 3142 presumption.

Under the Fourth Amendment analysis, the Court must decide whether Ali plausibly alleges that the Defendants violated his right to be free from unreasonable seizure by arresting and detaining him without arguable probable cause, based on fabricated evidence.[3]

To evaluate whether a person's Fourth Amendment right has been violated by an arrest pursuant to a warrant that lacked probable cause, the court applies the analysis set out in *Franks v. Delaware*, 438 U.S. 154 (1978). *See Hawkins v. Gage Cty.*, 759 F.3d 951, 958-59 (8th Cir. 2014); *Hernandez-Cuevas v. Taylor*, 723 F.3d 91, 101, 105 (1st Cir. 2013). Thus, the court considers whether there were deliberately or recklessly false statements made in support of a finding of probable cause and whether those statements were necessary to the finding of probable cause. *See Franks*, 438 U.S. at 156; *Williams v. City of Alexander*, 772 F.3d 1307, 1311 (8th Cir. 2014). The court also considers whether material information was omitted with the intent to mislead or with reckless disregard as to whether the omission was misleading. *See Williams*, 772 F.3d at 1312; *Hawkins*, 759 F.3d at 959. If, setting aside the false statements (or adding in the omitted information), there was no probable cause to arrest, then the arrest violated the Fourth

---

[3] Because § 1983 and *Bivens* claims are analyzed similarly, the Court does not reach the question of whether Ali's claim is under § 1983 or *Bivens*. *See* Osman Op. 13-17.

8

Amendment. *See Williams*, 772 F.3d at 1312-13; *Hawkins*, 759 F.3d at 958-59; *Hernandez-Cuevas*, 723 F.3d at 105. Probable cause "exists when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." *Greenman v. Jessen*, 787 F.3d 882, 888 (8th Cir. 2015) (citation omitted).

Where a plaintiff alleges that she was arrested without probable cause and the defendant asserts the qualified immunity defense, courts ask whether there was "*arguable* probable cause to arrest." *Stewart v. Wagner*, 836 F.3d 978, 984 (8th Cir. 2016) (citing *New v. Denver*, 787 F.3d 895, 899 (8th Cir. 2015)) (applying this standard to a Fourth Amendment claim for detention based on allegedly false and incomplete information in a probable cause statement).[4] "[T]he issue for immunity purposes is not probable cause in fact but arguable probable cause, that is, whether the officer should have known that the arrest violated plaintiff's clearly established right." *New*, 787 F.3d at 899. "It is clearly established that the Fourth Amendment requires a *truthful factual showing* sufficient to constitute probable cause before an arrest warrant can issue." *Peterson v. City of Plymouth*, 60 F.3d 469, 477 (8th Cir. 1995) (emphasis added) (citation omitted).

### a. Analysis of Ali's Claim Under the Fourth Amendment

In considering whether Ali plausibly alleges a Fourth Amendment violation, the Court disregards mere conclusory statements, focuses on well-pleaded factual allegations and accepts them as true, and applies its judicial experience and common sense. *See Ashcroft v. Iqbal*, 556

---

[4] An arresting officer who had "a mistaken but objectively reasonable belief" that probable cause existed would be entitled to qualified immunity. *McCabe v. Parker*, 608 F.3d 1068, 1078 (8th Cir. 2010). Ali alleges, however, that there was no mistaken belief—rather, that Weyker knowingly fabricated the material evidence. The "arguable probable cause" standard arguably would not apply if Weyker intentionally misled, but Ali does not press the point, *see* Osman DOJ Opp. 34-35, and it is not dispositive here.

9

U.S. 662, 678-79 (2009). The Court also properly considers the Tennessee Case court record in assessing the pleadings. *See, e.g.*, *Greenman*, 787 F.3d at 887.

Ali's core allegations closely track Osman's. Like Osman, he alleges that a jury acquitted six co-defendants, and the court acquitted[5] another three after trial. In the Osman Opinion, the Court examines several orders and memoranda by the district court and two separate Sixth Circuit Court of Appeals opinions concerning the Tennessee Case, some of which both Osman and Ali cite. *See* Osman Op. 25-33. In Osman's case, the Court found that some of these statements by judicial officers are remarkable, and that taken all together along with other well-pleaded facts, they nudge Osman's Fourth Amendment claim over the *Iqbal* plausibility line. The Court further found that the fact that Osman was also indicted in charges of obstruction of justice relating to the prosecution of the allegedly fabricated sex-trafficking-conspiracy case does not *per se* doom her Fourth Amendment claim. *See* Osman Op. 35-37. Ali's case, however, is different.

Weyker and Bandemer argue that even if Ali plausibly alleges that Weyker fabricated evidence material to the indictment for sex-trafficking-related charges, the fact that he was also indicted in a non-trafficking-related count defeats his Fourth Amendment claim. They argue that Ali fails to plausibly allege that he did not conspire to commit credit card fraud, which was a crime for which he was indicted (Count 18), and that it is thus clear that there was probable cause to arrest. *See* DOJ Br. 65-68. Ali counters that it is the Defendants' burden to establish their affirmative defense of arguable probable cause and that "too many fact issues remain at this stage for the Court to rule on the effects that other charges may have had on the Osman Plaintiffs' unlawful arrests." *See* Osman DOJ Opp. 34. Moreover, Ali argues there was no

---

[5] The Court uses the word "acquittal" for consistency with the Tennessee Case opinions and the pleadings but has some reservations about it. *See* Osman Op. 23-25.

arguable probable cause to arrest him in 2010 "without the fabricated evidence," as shown by the fact that the government ultimately dismissed all charges against all remaining co-defendants. *Id.* at 35.

Although Ali clearly and repeatedly alleges that there was never any "conspiracy to recruit and transport minors for the purpose of engaging in commercial sex acts," *e.g.*, FAC ¶ 26, he never denies that he was in a conspiracy to commit credit card fraud. He does allege that there was "no real evidence of a criminal organization or 'gang,' as noted by the Sixth Circuit," FAC ¶ 31, citing a footnote in the Sixth Circuit Court of Appeals opinion affirming the bench acquittals of three co-defendants. The court's footnote acknowledged that two of the alleged gangs (the Somali Mafia and Somali Outlaws) were "actually two parts of the same gang, differentiated by age," and commented that "the prosecution produced no information about either of these gangs, *i.e.*, gang initiation and culture, organization or structure, criminal activity, etc." *Fahra*, 643 Fed. Appx. at 481 n.1. Neither of those statements can fairly be construed as a finding that the gangs did not exist, that there were no conspiracies to commit certain crimes, or that Ali was unconnected with any gang or credit-card-fraud conspiracy.

Ali does not specifically allege that there was no probable or arguable probable cause to arrest him on the fraud count in November 2010. He does allege that he "was subject to presumptive detention and was ordered detained pending trial" because of the sex-trafficking-related counts in which he was charged and that "[b]ut for those specific charges, Ali would not have been detained." FAC ¶ 28. This complaint about the specific form of detention (in custody or out on bond), is not the same as disclaiming participation in a credit-card-fraud conspiracy or alleging that he could not have been lawfully arrested on the fraud count. The closest Ali gets to alleging the total absence of probable cause on any charge is his allegation that he "never would

11

have been indicted or detained had Weyker not fabricated evidence, coerced witnesses, and misled federal authorities." FAC ¶ 60; *see also id.* ¶ 61 (alleging that he "spent over five years in various federal custody settings as a direct and proximate result of Weyker's sprawling and tawdry scheme"). He alleges no well-pleaded facts to support this conclusory statement. Ali never alleges, for instance, that he did not know the other co-defendants named in Count 18 or never entered into an agreement with them to commit credit card fraud. And Ali never denies that he asked co-defendant L. Omar how many "cards and numbers" he had, as alleged in the indictment. This absence of well-pleaded facts as to Count 18 contrasts with Ali's allegations about Weyker's fabrication of evidence for the sex-trafficking-related counts, which include some well-pleaded facts like the allegation that Ali has never even met Jane Doe Two and never entered into a conspiracy to sex-traffic anyone. The contrast demonstrates the lack of well-pleaded facts alleging an absence of probable or arguable probable cause to arrest and detain him on Count 18.[6] Further, in a criminal case as lengthy and complicated as the Tennessee Case, it is not reasonable to assume from the Government's eventual dismissal of all charges, after an appeals court affirmed the grant of acquittals for three co-defendants on the basis of a variance, that there was never probable cause to support *any* of the charges.

Therefore, the Court agrees with Weyker and Bandemer that Ali's complaint must fail because he does not plausibly allege that there was no probable or arguable probable cause to arrest him on Count 18. Even if there were no probable cause to arrest Ali based on the allegedly spurious sex-trafficking-conspiracy charges, there is no Fourth Amendment violation where there is probable cause to arrest "for the violation of some other law." *Greenman*, 787 F.3d at

---

[6] The Court further notes that at least one of his co-defendants pleaded guilty to the credit-card conspiracy charged in Count 18. *See United States v. Nur*, No. 3:10cr260, Dkt. No. 2870 (M.D. Tenn. Oct. 5, 2012).

889 (citation omitted); *see also Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (holding that there is no Fourth Amendment violation if there is probable cause to arrest based on any criminal offense, even if the officer's subjective reason for arresting was a different and unrelated offense); *Keil v. Triveline*, 661 F.3d 981, 986 (8th Cir. 2011). Ali thus "has failed to 'make out a violation of a constitutional right' in the first instance." *Greenman*, 787 F.3d at 888; *see also Keil*, 661 F.3d at 986.

Taking as true Ali's allegations that Weyker fabricated the evidence supporting the sex-trafficking charges, the Court is not unsympathetic to the argument that Ali's pretrial detention in custody may have been harder because of those charges and the stigma associated with them. *See* FAC ¶¶ 68-69. But as Ali acknowledges, detention comes in different forms and is a restraint on liberty in any form. *See, e.g.*, *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975) ("Even pretrial release may be accompanied by burdensome conditions that effect a significant restraint of liberty."). The Fourth Amendment does not distinguish between the forms of pretrial detention; it "protects '[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures,'" and "'[a] person is seized' whenever officials 'restrain[] his freedom of movement' such that he is 'not free to leave.'" *Manuel*, 137 S. Ct. at 917 (citations omitted).

Defendant Weyker is entitled to qualified immunity. Ali has failed to plausibly allege a constitutional violation.

### b. Supervisory Liability

Ali sues Bandemer and Robert Roes 1-3 in their individual capacities as supervisors. He alleges that they were deliberately indifferent to but not direct participants in Weyker's alleged violations.

A supervisor sued in his or her individual capacity in a § 1983 or *Bivens* suit "is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677; *see also S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015) ("Government officials are personally liable only for their own misconduct."). "When a supervising official who had no direct participation in an alleged constitutional violation is sued for failure to train or supervise the offending actor, the supervisor is entitled to qualified immunity unless plaintiff proves that the supervisor (1) received notice of a pattern of unconstitutional acts committed by a subordinate, and (2) was deliberately indifferent to or authorized those acts." *Krigbaum*, 808 F.3d at 340 (citing *Livers*, 700 F.3d at 355). "This rigorous standard requires proof that the supervisor had notice of a pattern of conduct by the subordinate that violated a clearly established constitutional right. Allegations of generalized notice are insufficient." *Id.* The notice prong requires that "[t]o impose supervisory liability, other misconduct [allegedly giving the supervisor notice] must be very similar to the conduct giving rise to liability." *Id.* (quoting *Livers*, 700 F.3d at 356).

First, given the Court's conclusion that Ali has not adequately alleged a constitutional violation by Weyker, the supervisory liability claims "automatically fail for lack of an underlying constitutional violation." *Mendoza v. U.S. Immig'n & Customs Enf't*, 849 F.3d 408, 420 (8th Cir. 2017) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 798-99 (1986)).

Moreover, Ali's complaint, which is practically identical to Osman's complaint as to the supervisory liability allegations, likewise contains few allegations—and fewer well-pleaded facts—regarding supervisory liability. Like Osman, Ali alleges that Bandemer and the Robert Roes had supervisory responsibility over Weyker; that the investigation was very important to the St. Paul Police Department vice unit; and that "[b]y February 12, 2012, at the latest, Bandemer and the other supervisory Defendants and the City had actual notice of the falsity of

14

the allegations put forth by Weyker," based on district court orders including the memorandum-order at Dkt. No. 1392 and because of news coverage, FAC ¶¶ 45, 52-53. Like Osman, Ali cites *United States v. Mohamud*, No. 3:10cr260, 2013 WL 1935506, at *11 n. 6 (M.D. Tenn. May 9, 2013), and *United States v. Adan*, 913 F. Supp. 2d 555, 589 n.10 (M.D. Tenn. Dec. 19, 2012), in support of his supervisory liability notice allegations. FAC ¶ 53.

As explained in the Osman Opinion, these allegations do not sufficiently plead supervisory liability based on notice. *See* Osman Op. 37-41. Nor do they establish a pattern of unconstitutional acts by Weyker. Ignoring conclusory or unsupported allegations, Ali does not allege any other similar acts by Weyker before her Tennessee Case investigation that could show a pattern about which Bandemer or the Robert Roes personally knew.

The allegations fail to state a claim for supervisory liability, and Bandemer and Robert Roes 1-3 are entitled to qualified immunity as to these counts.

### c. Municipal Liability

Ali sues St. Paul as well as Bandemer and the Robert Roes in their official capacities for municipal liability under *Monell v. Dept. of Social Servs. of the City of New York*, 436 U.S. 658 (1978). "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Id.* at 694. "Instead," a municipality is liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . ." *Id.*

A plaintiff therefore must show that there is an "official" policy or a "custom or usage with the force of law." *Kelly v. City of Omaha*, 813 F.3d 1070, 1075 (8th Cir. 2016). A plaintiff must plead "allegations, reference, or language by which one could begin to draw an inference that the conduct complained of . . . resulted from an unconstitutional policy or custom."

*Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004) (citation omitted). Absent allegations of an official policy that was the moving force behind the violation, "[m]isconduct among a municipality's employees must be 'continuing, widespread, [and] persistent' to establish such a custom." *Kelly*, 813 F.3d at 1075 (citation omitted). "In addition, the municipality will not be liable unless policymaking officials exhibit '[d]eliberate indifference to or tacit authorization of such conduct . . . after notice to the officials of that misconduct." *Id.* at 1075-76 (citation omitted). The question is whether a "governmental policy or custom was the 'moving force' that led to the deprivation of [the plaintiff's] constitutional rights." *Speer v. City of Wynne*, 276 F.3d 980, 986 (8th Cir. 2002). Even if no individual employee is found liable, a municipality might still be liable, but only where "the combined actions of multiple officials or employees may give rise to a constitutional violation." *Id.*

Ali alleges that Weyker acted alone, with little supervision. *See, e.g.*, FAC ¶ 44. He does not allege facts to support conclusory allegations that Weyker or other St. Paul Police Department employees fabricated evidence in other investigations. For the same reasons given in the Osman Opinion, *see* Osman Op. 41-42, Ali's municipal liability allegations also fail.

### VI. Conclusion

Defendants are entitled to qualified immunity on all counts, because Ali's complaint fails to plausibly allege a violation of his constitutional rights. The Court grants the Defendants' motions and dismisses with prejudice. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1060-61 (8th Cir. 2013); *C.N. v. Willmar Pub. Sch., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 635 (8th Cir. 2010). The Court will not grant leave to amend based on a request made in passing at the end of a brief without complying with local rules or in any way indicating what changes might be made. *See In re Baycol Prod. Litig.*, 732 F.3d 869, 880 n.8 (8th Cir. 2013).

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendants Heather Weyker and John Bandemer's Motion to Dismiss [Dkt. No. 37] is GRANTED.

2. Defendant City of Saint Paul's Motion for Judgment on the Pleadings [Dkt. No. 46] is GRANTED.

3. Plaintiff Musse Ahmed Ali's First Amended Complaint is DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: August 9, 2017

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge